IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| **TABITHA C.**[1], **Plaintiff,** | ) )  ) |
| v. | ) )  Civil Action No. 7:22-CV-300 |
| **KILOLO KIJAKAZI, Acting Commissioner of Social Security,** | ) ) ) ) |
| **Defendant.** | ) ) |

## MEMORANDUM OPINION

Plaintiff Tabitha C. ("Tabitha") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding her not disabled and therefore ineligible for Disability Insurance Benefits ("DIB") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433. Tabitha alleges that the Administrative Law Judge ("ALJ") erred by failing to properly determine her physical residual functional capacity ("RFC") and perform a function-by function analysis; and the Appeals Council failed to consider new, material evidence submitted in support of her claim. I conclude that the ALJ's decision does not adequately explain his analysis of the record and how he arrived at his conclusions. Accordingly, I **GRANT in part** Tabitha's Motion for Summary Judgment (Dkt. 15), **DENY** the Commissioner's Motion for Summary Judgment (Dkt. 18) and **REMAND** this case for further administrative proceedings consistent with this opinion.

## STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence supports

---

[1] Due to privacy concerns, I use only the first name and last initial of the claimant in social security opinions.

the Commissioner's conclusion that Tabitha failed to demonstrate that she was disabled under the Act.[2] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations and alterations omitted); see also Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (emphasizing that the standard for substantial evidence "is not high"). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Mastro, 270 F.3d at 176 (quoting Craig v. Chater, 76 F.3d at 589). Nevertheless, the court "must not abdicate [its] traditional functions," and it "cannot escape [its] duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). "The inquiry, as is usually true in determining the substantiality of evidence, is case-by-case." Biestek, 139 S. Ct. 1148. The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

However, remand is appropriate if the ALJ's analysis is so deficient that it "frustrate[s] meaningful review." Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015) (noting that "remand is necessary" because the court is "left to guess [at] how the ALJ arrived at his conclusions"); see

---

[2] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience.  See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

2

also Monroe v. Colvin, 826 F.3d. 176, 189 (4th Cir. 2016) (emphasizing that the ALJ must "build an accurate and logical bridge from the evidence to his conclusion" and holding that remand was appropriate when the ALJ failed to make "specific findings" about whether the claimant's limitations would cause him to experience his claimed symptoms during work and if so, how often) (citation omitted). In Mascio and Monroe, the court remanded because the ALJ failed to adequately explain how he arrived at conclusions regarding the claimant's RFC. Mascio, 780 F.3d at 636, Monroe, 826 F.3d. at 189. Similarly, I find that remand is appropriate here because the ALJ's opinion fails to explain how he analyzed Tabitha's reports of symptoms and limitations and arrived at her RFC.

## CLAIM HISTORY

Tabitha filed for DIB benefits in July 2020, claiming that her disability began on August 30, 2017. R. 51.[3] The state agency denied Tabitha's claims at the initial and reconsideration levels of administrative review. R. 95–122. ALJ Theodore Burock held a hearing on August 16, 2021, to consider Tabitha's claim for DIB, which included testimony from vocational expert Sheryl Bustin. R. 66–94. Tabitha was represented by counsel at the hearing.

On October 22, 2021, the ALJ entered his decision considering Tabitha's claims under the familiar five-step process[4] and denying her claim for benefits. R. 51–61. The ALJ found that

---

[3] Tabitha's date last insured was December 31, 2022; thus, she must show that her disability began on or before this date and existed for twelve continuous months to receive disability insurance benefits. R. 36; U.S.C. §§ 423(a)(1)(A), (c)(1)(B), (d)(1)(A); 20 C.F.R. §§ 404.101(a), 404.131(a).

[4] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R.§ 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. At the fifth step, the burden shifts to the Commissioner to establish that the claimant maintains the RFC, considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

Tabitha suffered from the severe impairments of degenerative disc disease of the lumbar spine; hidradenitis suppurativa; diabetes mellitus; and obesity. R. 54. The ALJ determined that these impairments, either individually or in combination, did not meet or medically equal a listed impairment. R. 55–56. The ALJ concluded that Tabitha retained the RFC to perform light work, except that she can occasionally balance, stoop, kneel, crouch, crawl, climb ramps and stairs; never climb ladders, ropes, or scaffolds; and should avoid hazards such as heights or machinery. R. 56.

The ALJ determined that Tabitha was unable to perform her past relevant work as a home health aide, but that she could perform other work that exists in the national economy such as cleaner/housekeeper, small products assembler, and assembler of electrical accessories. R. 59–60. Thus, the ALJ concluded that Tabitha was not disabled. R. 61. Tabitha appealed the ALJ's decision and the Appeals Council denied her request for review on May 4, 2022. R. 1–6.

## ANALYSIS

Tabitha asserts that the ALJ did not sufficiently explain how he concluded that she could perform specific functions in her RFC, but instead simply summarized isolated snippets of the medical record and declared the weight given to the medical opinions. Tabitha also asserts that the ALJ's analysis of her skin condition and Listing 8.06 was insufficient, and the ALJ essentially required Tabitha to meet a higher evidentiary burden than the Listing provides.  The Commissioner argues that the ALJ's analysis satisfies the requirements of the regulations and appropriately explains his consideration of Listing 8.06 and Tabitha's RFC.  I find that the ALJ's decision does not sufficiently explain how he determined that Tabitha's hidradenitis suppurativa did not meet Listing 8.06; nor does he explain how he determined the impact of her symptoms resulting from the skin condition on her RFC.

I.     **Medical History**

Tabitha is a stay-at-home mother of two sons. R. 70–71. Tabitha was diagnosed with hidradenitis suppurativa[5] when she was 13 years old. R. 371.  She sought treatment from a dermatologist for the condition prior to her alleged disability onset date. See R. 316, 371–73. Dermatology records reflect that Tabitha was prescribed Clindamycin lotion and Humira, but stopped both treatments because they did not help. R. 316. She was also given intralesional Kenalog injections.

In March 2017, Tabitha reported sharp, stabbing pain under her arms that prevented her from wearing regular clothes. R. 371. She stated that she felt achy all over and it hurt to walk. Tabitha reported that hidradenitis suppurativa caused her to have significant depression and anxiety and "ruined her life." Id.  Examination noted lesions and scarring consistent with hidradenitis suppurativa. R. 372. Hira Chaudhary, D.O., started Tabitha on Gabapentin for pain control.

On November 6, 2018, Tabitha saw William Forgach, D.O., for follow up of her medications. Tabitha reported symptoms of hidradenitis suppurativa since age 12, with no alleviation, which are triggered by hormones and stress. R. 361. She reported 10 active lesions regularly, but 1 large lesion around her menstrual cycle. She noted significant pain with lesions, reduced mildly by Gabapentin. She reported that dermatology was not able to offer alleviating

---

[5] "Hidradenitis suppurativa is a chronic skin disease which causes painful, boil-like lumps that form under the skin and often secrete pus and blood. Hidradenitis suppurativa occurs most often in areas where skin rubs together, such as the armpits, groin, and under the breasts. Symptoms usually begin after puberty. The first sign may be a single pocket of pus (abscess) or hard lumps associated with hair follicles. The abscesses or lumps often change to painful swollen clusters of skin sores that drain a bloody and often, bad smelling discharge. As the sores heal, they may leave hardened, rope-like scars or form tunnels under the skin (called sinus tracks) that can be disfiguring and make movement difficult. As time goes by, the skin lesions occur more often and get worse over time." https://rarediseases.info.nih.gov/diseases/6658/hidradenitis-suppurativa (last visited on May 1, 2023).

treatment. Dr. Forgach recommended smoking cessation and weight management, and refilled her Gabapentin prescription. R. 363.

On April 9, 2019, Tabitha saw Charles Danish, D.O., for neuropathy and anxiety. She did not want medication for anxiety at that time. Tabitha complained of intermittent back pain after bending over to tie bags 5 days ago, and reported walking around the neighborhood for ½ to 1 mile almost every night with her kids for exercise. R. 357.

On May 3, 2019, Tabitha sought treatment from the emergency department for an abscess in between her left leg and buttocks due to hidradenitis suppurativa. She reported that she is "typically able to get them to go away at home" but this abscess would not resolve after four days. R. 419–20.

Tabitha followed up with Dr. Danish on May 7, 2019, and reported flare ups of her skin lesions monthly and that dermatology had not been able to help her in the past. R. 353. Dr. Danish started Tramadol for pain and encouraged weight loss and control of blood sugar. R. 355.

On July 1, 2019, Tabitha presented to the emergency department for an abscess on her left lower abdomen with redness, swelling and pain. R. 413–14. The treating provider incised and drained the abscess. R. 416.

On September 3, 2019, Tabitha saw Sonya Jhaveri, D.O. for diabetes management. She reported some discomfort and pain at times from flares of her hidradenitis suppurativa, mostly in her groin and underarm. R. 343. Tabitha's examination was positive for hidradenitis suppurativa. She was counseled to clean with antibacterial soap, and that weight loss and tobacco cessation would help. R. 346.

On February 13, 2020, Tabitha visited Nadia Khan, D.O., for medication refills and noted that she needs Tramadol and Gabapentin to help with pain for her skin condition and back pain.

R. 338.  Her examination was positive for hidradenitis suppurativa "throughout." R. 340.  Dr. Khan assessed type 2 diabetes, obesity, mixed hyperlipidemia, hidradenitis suppurativa, and acute right-sided low back pain without sciatica.

On August 11, 2020, state agency medical consultant Jack Hutcheson, M.D., reviewed Tabitha's records and determined that she could perform a range of light work with occasional stooping and crawling. R. 101–103.

On August 12, 2020, Rebecca KingMallory, M.D., assessed Tabitha with hidradenitis suppurativa, low back pain, diabetes and a severe episode of recurrent major depressive disorder. R. 498.  Tabitha followed up with Dr. KingMallory in October 2020 for her diabetes. Tabitha complained of back pain across the bottom of her back that goes up the middle, and reported that she tried physical therapy without relief. R. 494–96.

Tabitha began treatment with Blue Ridge Pain Management Associates for low back pain in October 2020. R. 533.  Tabitha reported sharp, stabbing pain that is exacerbated by bending, coughing, heavy lifting, laying down, sitting and yard work. Id. On examination, Tabitha had a slight reduction in flexion of her lumbar spine with good range of motion in extension. She had an increase of pain with flexion but not extension. Tabitha had limited rotation of her lumbar spine with increased pain, and significant TTP along the midline lumbosacral spine and paraspinals. R. 534.  She was assessed with degenerative disc disease of the lumbar spine, lumbar spondylosis, obesity and chronic pain syndrome.  Adam Battaglia, PA-C, noted that x-rays indicated significant spondylosis and degenerative changes of her lumbar spine worse at L5-S1.  Tabitha was scheduled for epidural steroid injections.

In December 2020, state agency medical consultant William Rutherford, Jr., M.D., reviewed Tabitha's records and determined that she could perform medium work with postural

7

limitations of frequently climbing ramps/stairs, climbing ladders/ropes/scaffolds, stooping, kneeling, crouching and crawling. R. 115–17.

Tabitha continued to follow up with Dr. KingMallory for her ongoing conditions, including diabetes and major depressive disorder from December 2020 through June 2021. R. 568, 587, 591, 613. During that time, Dr. KingMallory noted that Tabitha was making positive changes in her diet and with medication; and that her depression was stable on medication. R. 587.  Tabitha also received regular treatment for depression during that time period with Janie Kelly, LPC. R. 561, 572, 579, 605, 610.

On April 21, 2021, Tabitha saw George Baylor, M.D., for low back pain and reported that she was able to perform activities of daily living and household chores as she was a stay-at-home mom who cares for two boys. R. 513–14.

On August 11, 2021, Dr. KingMallory completed a Residual Functional Capacity Questionnaire, and concluded that Tabitha met the requirements for Listing 8.06 for "[h]idradenitis suppurativa with extensive skin lesions involving both axillae, both inguinal areas or the perineum that persist for at least three months despite continuing treatment as prescribed." R. 619.  Dr. KingMallory determined that Tabitha could sit, stand and walk about 2 hours in an 8-hour workday; lift 10 pounds frequently and more than 10 pounds occasionally; that her pain would frequently interfere with attention and concentration; that she is likely to have good days and bad days due to her impairments; and would likely be absent from work about three times a month. R. 619–20.  Dr. KingMallory noted that Tabitha needs to take her diabetic medications regularly and gain better control of her diabetes in order to decrease flares of her hidradenitis." R. 620.

On August 17, 2021, Dr. KingMallory noted that Tabitha was working with a lawyer on disability due to her hidradenitis suppurativa. Dr. KingMallory stated that it is a chronic skin condition that will never fully resolve. R. 649–50. She noted that it is due to systemic inflammation from immune function dysregulation, that surgery is typically not curative and is very invasive and the goal of therapy is to prevent flares as much as possible and treat them as they occur. R. 650.

At the administrative hearing, Tabitha testified that she has low back pain that comes and goes, worse with physical activity. R. 72. She testified that spinal injections helped. R. 72. Tabitha stated that she was working on getting her diabetes under control. R. 73. She reported being depressed, feeling suicidal once or twice a month, and having premenstrual distress disorder that increases her depression. Tabitha reported having hidradenitis suppurativa since she was 13, with lesions on her stomach, back of neck, under breasts, armpits, and around the groin area. Tabitha stated that daily activities were hard, and she is not on any current medication. She noted that a dermatologist started her on Humira in the past, but it had negative side effects. R. 77. Tabitha reported being uncomfortable all the time, despite taking pain medication. She stated that she cannot walk a block, can stand for 10–15 minutes at a time, and has trouble sleeping. R. 79. Tabitha reported having painful lesions that swell, are tender, drain, are red and inflamed, and weep. R. 81.

## II.    ALJ Decision

The ALJ determined that Tabitha had severe impairments of degenerative disc disease of the lumbar spine, hidradenitis suppurativa, diabetes mellitus and obesity. R. 54. The ALJ determined that Tabitha did not meet Listing 8.06, stating,

> There is little evidence of extensive skin lesions involving both axillae, both inguinal areas, or the perineum that persist for at least three months despite

9

> continuing treatment as prescribed. For example, in May 2019, the claimant presented to the emergency room with an abscess that had lasted only four days, and she noted "she is typically able to get [her abscesses] to go away at home". There is no medical evidence of record the claimant received debridement since 2019, or any specialist treatment for her skin condition—such as from a dermatologist—since the alleged onset date.

R. 56.

The ALJ's decision does not include a separate review of Tabitha's medical records and history, but rather references certain records to support his analysis. When determining Tabitha's RFC, the ALJ found Tabitha's statements about the intensity, persistence and limiting effects of her symptoms inconsistent with the record, noting discrete statements in her records that she had a "small abscess;" she had elevated blood sugar with medication noncompliance; she was counseled on smoking cessation to help with her hidradenitis suppurativa but continued to smoke; that she needed to gain better control of her diabetes to decrease flares of her hidradenitis suppurativa; and that an x-ray of her SI joint showed no acute osseous abnormality. R. 57. The ALJ also noted that Tabitha had not received debridement of her abscesses since 2019 or visited a specialist for her skin condition. Id.

The ALJ considered the opinions of the state agency medical consultants that Tabitha can perform a range of light work (Dr. Hutcheson) and a range of medium work (Dr. Rutherford); and found them persuasive to the extent that Tabitha can perform light work and occasionally stoop and crawl. R. 58. The ALJ found the opinions supported by longitudinal treatment notes that generally show Tabitha in no acute distress with normal gait, full strength, intact sensation, good range of motions, etc. The ALJ also found the statements consistent with Tabitha's activities of daily living of caring for her sons, preparing simple meals, vacuuming, rarely driving, and shopping in stores. R. 58.

The ALJ considered Dr. KingMallory's September 2021 opinion and found it unsupported by her treatment notes, "which largely show that Tabitha is in no acute distress." R. 58. The ALJ explained that Dr. KingMallory's opinion is a checklist with minimal explanation, is inconsistent with Tabitha's activities of daily living, and is inconsistent with Tabitha's progress notes that mostly show her in no acute distress with normal gait, full strength, intact sensation, intact cranial nerves, good range of motion, normal extremities and no edema. Thus, the ALJ found the opinion unpersuasive. The ALJ also noted that he was not analyzing an August 2021 statement from Dr. KingMallory that Tabitha meets Listing 8.04[6] because "statements on issues reserved to the Commissioner…are inherently neither valuable nor persuasive to the issue of whether a claimant is disabled…" R. 59.

### III.  Discussion

Tabitha asserts that the ALJ failed to make express findings regarding her RFC limitations; failed to provide an explanation regarding how he reached his RFC conclusions; improperly discounted Dr. KingMallory's medical opinion; and improperly required Tabitha to meet higher requirements than those set forth in Listing 8.06. The Commissioner asserts that the ALJ's analysis allows for meaningful review and provides substantial evidence to support his decision. I find that the ALJ's decision does not reflect full consideration of Tabitha's history of hidradenitis suppurativa and medical treatment, and provides minimal reasoning to discount Tabitha's symptoms, which impacts his analysis of Listing 8.06 and the RFC.

The ALJ is required to provide a sufficient explanation in his decision to allow this court to conduct a meaningful review of the RFC determination. The ALJ fulfills this duty with "a narrative discussion describing how the evidence in the record supports each of his conclusions,

---

[6] This appears to be a typo by the ALJ, as Dr. KingMallory's opinion states that Tabitha meets Listing 8.06 for hidradenitis suppurativa. R. 619.

citing specific medical facts and non-medical evidence, which 'build[s] an accurate and logical bridge from the evidence to [its] conclusion.'" Neville v. Berryhill, No. 6:16-CV-6, 2017 WL 3909735, at *4 (W.D. Va. Aug. 22, 2018) (quoting Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (emphasizing that the ALJ must "build an accurate and logical bridge from the evidence to his conclusion" and holding that remand was appropriate when the ALJ failed to make "specific findings" about whether the claimant's limitations would cause him to experience his claimed symptoms during work and if so, how often)).

Further, in Mascio v. Colvin, the Fourth Circuit clarified the ALJ's duty of explanation to adequately review the evidence and explain the disability decision. 780 F.3d at 636. The ALJ has the responsibility to address the evidence of record that supports his conclusions and ensure that the hypothetical presented to the vocational expert includes all limitations set forth in the RFC. The failure to make this connection means "the analysis is incomplete and precludes meaningful review." Monroe, 826 F.3d at 190.

Here, the ALJ's decision fails to thoroughly review Tabitha's records and explain how he analyzed and arrived at the RFC. The ALJ's analysis of Tabitha's painful skin condition, treatment, and resulting limitations is, at best, sparse. The ALJ did not provide a history or summary of Tabitha's medical treatment in his opinion, but instead referenced certain medical records in support of his RFC analysis. As a result, the ALJ's decision does not provide a detailed review of Tabitha's medical history, her treating physicians' findings, and the overall severity of her conditions, which raises concerns about whether the ALJ actually considered that evidence when evaluating her RFC.

For example, when evaluating whether Tabitha met Listing 8.06, the ALJ found "little evidence" of extensive skin lesions involving both axillae, both inguinal areas, or the perineum

that persist for at least three months despite continuing treatment as prescribed. R. 55.  In support of this conclusion, the ALJ noted that while at an emergency room visit in May 2019 to drain an abscess that lasted over four days, Tabitha stated that she could typically get her abscesses to go away at home. Id. He also noted that Tabitha did not receive a debridement since 2019 or any specialist treatment for her skin condition during the relevant period. The ALJ provided no other explanation or analysis to support his conclusion that Tabitha did not meet or equal Listing 8.06.

When determining whether a medical impairment meets or equals a listing, the ALJ is bound to "consider all evidence in [claimant's] case record about [an] impairment(s) and its effects on [claimant] that is relevant to this finding.... [The ALJ] also consider[s] the opinion given by one or more medical or psychological consultants designated by the Commissioner." 20 C.F.R. §§ 404.1526(c), 416.926(c). While Tabitha bears the burden of proving that her condition meets a listing, the Fourth Circuit has found error where there is evidence in the record that would support a finding that a claimant's impairment meets a listing, but the ALJ fails to provide a full explanation in support of a contrary determination. See Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013) (concluding the ALJ's "insufficient legal analysis makes it impossible for a reviewing court to evaluate whether substantial evidence supports the ALJ's findings") (citing Cook v. Heckler, 783 F.2d 1168, 1173 (4th Cir. 1986)).

Here, Tabitha's treatment records reflect consistent, ongoing complaints of skin lesions due to hidradenitis suppurativa over a period of multiple years. Tabitha's treating medical provider, Dr. KingMallory, certified that Tabitha suffered from extensive skin lesions involving both axillae, both inguinal areas, or the perineum that persist for at least three months despite continuing treatment as prescribed. R. 619.  The ALJ's decision discounted this evidence based on one statement by Tabitha— made while seeking treatment for a painful abscess at the

13

emergency room—that her abscesses typically resolve at home. This isolated statement from an emergency department visit is contradicted by numerous reports and complaints to her other treatment providers, which are not noted or discussed in the ALJ's decision.

Further, although the ALJ correctly noted that Tabitha did not visit a specialist or dermatologist during the alleged period of disability, the records reflect that Tabitha received treatment from a dermatologist prior to her onset date that failed to relieve her symptoms and caused negative side effects. See R. 77 (Tabitha testified that a dermatologist started her on Humira in the past, but it had negative side effects); 316, 371.  As the court noted in Youmans v. Berryhill, "[a] claimant may have good reasons for not following a prescribed treatment; thus, possible reasons why an individual may not adhere to prescribed treatment must be considered, and the ALJ must explain how those reasons were considered." No. 218-cv-18, 2018 WL 1483452, at *6 (E.D.N.C. Apr. 3, 2019). Medication side effects may be a good reason for failing to adhere to a prescribed treatment. See S.S.R. 16-3p, 2016 WL 1119029, at *9.

The record does not support the ALJ's conclusion that a specialist or dermatologist is a necessary or recommended treatment for Tabitha's condition. Dr. KingMallory noted that hidradenitis suppurativa is a "chronic skin condition that will never fully resolve," and that it is due to systemic inflammation from immune function dysregulation, that surgery is typically not curative and is very invasive, and the goal of therapy is to prevent flares as much as possible and treat them as they occur. R. 649–50. Tabitha sought ongoing treatment from her primary care providers for symptoms caused by hidradenitis suppurativa throughout the relevant period. Tabitha was counseled that proper medication compliance, controlling her diabetes and smoking cessation would help control her skin condition. R. 57.

Thus, ALJ's analysis of Listing 8.06 improperly dismisses Tabitha's ongoing painful skin condition based on one cherry-picked statement from her treatment records and her failure to seek treatment with a dermatologist. See Lewis v. Berryhill, 858 F.3d 858, 869 (4th Cir. 2017) ("An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherrypick facts that support a finding of nondisability while ignoring evidence that points to a disability finding.") (quoting Denton v. Astrue, 596 F.3d 419, 425 (7th Cir. 2010)).

The ALJ relied upon similar reasoning in his RFC analysis to find Tabitha's statements about her symptoms to be "inconsistent" and supported by the record.  The ALJ determined that Tabitha's statements regarding her symptoms are not entirely consistent with the medical evidence.  R. 57. In support, the ALJ referenced the emergency department note from May 2019 that Tabitha reported being "typically able to get [her abscesses] to go away at home;" a July 2019 treatment note that she had "small abscess" and "medication noncompliance;" that she was counseled on smoking cessation in September 2019; and that she continued to smoke in February 2020. R. 57. The ALJ also noted that Tabitha had not received debridement of her abscesses since 2019 or any specialist treatment for her skin condition since the alleged onset date. Id. The ALJ further stated that Tabitha's ability to perform daily activities such as caring for her sons, preparing simple meals, vacuuming, rarely driving and shopping in stores are inconsistent with her allegations of disabling symptoms. Id.

Under the regulations implementing the Social Security Act, an ALJ follows a two-step analysis when considering a claimant's subjective statements about impairments and symptoms. SSR 16-3P, 2017 WL 5180304 (S.S.A. Oct. 25, 2017); 20 C.F.R. §§ 404.1529(b)–(c), 416.929(b)–(c). First, the ALJ looks for objective medical evidence showing a condition that could reasonably produce the alleged symptoms, such as pain. Id. at *3, §§ 404.1529(b),

15

416.929(b). Second, the ALJ must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to work. Id. §§ 404.1529(c), 416.929(c). In making that determination, the ALJ must "examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." Id. (emphasis added). "At this step, objective evidence is *not* required to find the claimant disabled." Arakas v. Comm'r., 983 F.3d 83, 95 (4th Cir. 2020) (citing SSR 16-3p, 2016 WL 1119029, at *4–5). SSR 16-3p recognizes that "[s]ymptoms cannot always be measured objectively through clinical or laboratory diagnostic techniques." Id. at *4. Thus, the ALJ must consider the entire case record and may "not disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate" them. Id. at *5.

      Here, the ALJ's analysis of Tabitha's subjective reports of her symptoms and limitations relies upon isolated statements in a few treatment notes, which are contradicted by numerous reports and complaints to other treatment providers that are not discussed in the ALJ's decision. Tabitha's records reflect that she repeatedly complained of symptoms related to hidradenitis suppurativa, including discomfort, pain, and abscesses. Tabitha was treated by eight providers over five-year period, and her records show multiple emergency room visits to drain painful abscesses. Tabitha's treatment records reflect consistent, ongoing complaints of painful skin lesions. As discussed above, the records also reflect that Tabitha received treatment from a dermatologist prior to her onset date that failed to relieve her symptoms and that she suffered negative side effects from the treatment. The ALJ did not provide sufficient explanation as to

why Tabitha's allegations of symptoms and limitations from her hidradenitis suppurativa are not supported by the record. The ALJ's reliance on a few isolated notes in the record, which are contradicted by other significant evidence in the record, is insufficient. The ALJ also failed to acknowledge Tabitha's reasoning for discontinuing treatment with a dermatologist. The full extent of Tabitha's symptoms and treatment for her skin condition deserve to be considered by the Commissioner when determining her RFC.

The ALJ also provided no explanation as to how the minimal daily activities listed, such as preparing simple meals, vacuuming or shopping in stores, conflict with Tabitha's testimony that her skin condition makes it difficult to walk, lift her arms, be on her feet, lift, squat, bend, kneel, climb stairs, concentrate and use her hands. R. 56. The ALJ simply states that Tabitha's daily activities are "inconsistent" with her allegations that she has pain. R. 57. "[T]he ALJ must 'build an accurate and logical bridge from the evidence to his conclusion that the claimant's testimony was not credible'—which the ALJ wholly failed to do here." Brown v. Comm'r, 873 F.3d 251, 269 (4th Cir. 2017) (quoting Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (internal quotations omitted)). Monroe confirms the ALJ's obligation to explain the conclusions reached and identify the record evidence which supports those conclusions. Only then can a court meaningfully review whether substantial evidence supports the ALJ's decision.

Overall, the ALJ's analysis of Tabitha's treatment history and allegations is insufficient to build the required logical bridge between the objective and subjective evidence of Tabitha's impairments and the ALJ's RFC determination. The ALJ's opinion insufficiently reviews and examines the medical records and provides inadequate analysis of the record for the court to sufficiently review his findings. The ALJ did not provide the court with a road map as to how he arrived at his determination of Tabitha's limitations. Without this analysis, I am left to mine the

record for facts to support the ALJ's conclusions and essentially fill in the blanks the ALJ left in his analysis. This I cannot do. The record may well contain evidence support the ALJ's conclusions, but it is the responsibility of the ALJ to set out the evidence (with an adequate explanation) in his opinion.

## **CONCLUSION**

For the reasons set forth above, I **GRANT in part** Tabitha's Motion for Summary Judgment, **DENY** the Commissioner's Motion for Summary Judgment, and **REMAND** this matter to the Commissioner for additional consideration under sentence four of 42 U.S.C. § 405(g).

Entered: June 26, 2023

*Robert S. Ballou*

Robert S. Ballou
United States District Judge